# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LOIS BUTLER-JACKSON,

Defendant-Appellant.

FOR PUBLICATION
November 6, 2014
9:05 a.m.

No. 315591
Macomb Circuit Court
LC No. 2011-003482-FH

Before: RIORDAN, P.J., and CAVANAGH and TALBOT, JJ.

CAVANAGH, J.

Defendant appeals as of right her jury convictions for conspiracy to commit a legal act in an illegal manner, MCL 750.157a, and intentionally placing false information in a patient's medical record, MCL 750.492a(1)(a). We vacate defendant's conspiracy conviction. In all other respects, we affirm.

Defendant, a physician, and Brian Deloose were in the business of providing, for a price, physician certifications required to obtain registry identification cards issued by the department of licensing and regulatory affairs[1] to qualifying patients for the medical use of marijuana under the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq.*[2] See MCL 333.26426(a)(1). Defendant would provide Deloose with signed, but otherwise blank, physician certification forms, and Deloose would meet with their customers, fill in the blanks with the required information, and obtain money in exchange for the "physician certifications." Their customers could then submit the "physician certification," claiming to be eligible for a registry identification card as a "qualifying patient" under MCL 333.26426(a)(1) of the MMMA. A "qualifying patient" is "a person who has been diagnosed by a physician as having a debilitating medical condition." MCL 333.26423(i). And a qualifying patient with a registry identification card is not "subject to arrest, prosecution, or any penalty in any manner . . . for the medical use of marihuana in accordance with this act . . . ." MCL 333.26424(a).

---

[1] MCL 333.26423(c) and (j).

[2] While the statutory provisions refer to "marihuana," in this opinion we use the more common spelling "marijuana."

Criminal charges were filed against defendant and Deloose following a police investigation that involved two undercover police officers purchasing "physician certifications" from Deloose that were signed by defendant. The officers did not see defendant, were not examined by defendant, and gave defendant no medical history. The transactions with Deloose took approximately 15 to 20 minutes, the officers paid $250 for their "physician certifications," and defendant received a portion of the proceeds from each sale. Defendant was charged with conspiracy to commit a legal act in an illegal manner in violation of MCL 750.157a, for unlawfully conspiring "to issue signed 'Physician Certifications' under the Michigan Medical Marijuana Act without establishing a bona fide physician-patient relationship and/or without establishing a factual basis to form a professional opinion that the person is likely to receive therapeutic or palliative benefit from the use of marijuana." Defendant was also charged with falsifying medical records in violation of MCL 750.492a(1)(a). Deloose was charged with conspiracy and falsifying medical records, but he was also charged with three counts of delivery or manufacture of marijuana in violation of MCL 333.7401(2)(d)(iii).

Subsequently, defendant filed a motion to quash the information, arguing that her conduct was in conformity with the MMMA and, thus, she was entitled to immunity under MCL 333.26424(f). In the alternative, she argued, that statute was so vague that her right to due process was violated. Further, defendant argued that any "certification" she provided did not constitute a medical chart or report.

Plaintiff responded to defendant's motion to quash, arguing that defendant was not charged with a violation of the MMMA; rather, she was charged with conspiracy to commit a legal act in an illegal manner. The "legal act" was providing her signature on medical marijuana certification forms. The "illegal manner" included failing to examine any of their customers and providing signed, blank certification forms to Deloose. Plaintiff argued that, because defendant did not comply with the MMMA, she could not assert any of its defenses. Further, the "physician certifications" constituted medical records and, when defendant signed her name to blank certification forms attesting to her professional medical opinion without any contact with their customers, she falsified medical records.

The trial court agreed with plaintiff, noting that the essence of conspiracy is the agreement itself and concluding that defendant "participated in a scheme to legally provide certifications for potential consumers, in an illegal fashion" by pre-signing certifications without examining the prospective marijuana purchasers. Further, the trial court held, the definition of "medical record" includes information recorded in any form that pertains to a patient's health, MCL 333.26263(i). And defendant signed certifications stating that she "had responsibility for the care and treatment" of the named patient who, in her medical opinion, was diagnosed with a debilitating medical condition and was likely to benefit from the medical use of marijuana. Thus, defendant's motion to quash the information was denied.

Defendant moved for reconsideration of the trial court's opinion and order, arguing that the court failed to address her claim of immunity under MCL 333.26424(f) and her claim that the statute was vague. The trial court issued an opinion and order denying defendant's motion for reconsideration, holding that defendant was not charged with crimes under the MMMA; however, even if she was, defendant failed to establish that she complied with MCL 333.26424(f) and was entitled to immunity. Thereafter, defendant filed an application for leave

-2-

to appeal to this Court which was denied. *People v Butler-Jackson*, unpublished order of the Court of Appeals, entered November 19, 2012 (Docket No. 312869).

Subsequently, defendant filed a second motion to quash the information as to the conspiracy charge, arguing that the charge must be dismissed because the "unlawful manner" element of the conspiracy charge could not be established; her failure to follow the certification procedure set forth in the MMMA did not constitute a criminal offense. Plaintiff opposed defendant's motion, arguing that the manner in which the legal act was accomplished need not be "criminal." And, here, the "legal act" committed by defendant was certifying that individuals suffered from debilitating medical conditions and would benefit from the medical use of marijuana. The "illegal manner" was her failure to comply with the requirements of MCL 333.26424(f) because she certified individuals for use of medical marijuana but did not have bona fide physician-patient relationships and did not complete full medical history assessments. Plaintiff argued that "[t]he logical corollary to [this immunity statute] is that if the physician does not comport with the statute, she is subject to prosecution."

The trial court issued an opinion and order denying defendant's second motion to quash, holding that the "illegal manner" in which defendant was alleged to have committed the legal acts of certifying individuals for marijuana use was her failure to comply with the requirements of MCL 333.26424(f). Further, the court held, although defendant would be afforded the protections set forth in that statute if she had complied with it, "the natural corollary to that is that if the physician does not comply, he or she is subject to prosecution." Thereafter, a jury trial was conducted and defendant was convicted of both charged offenses. This appeal followed.

Defendant argues that her conspiracy conviction must be reversed because she was immune from prosecution under MCL 333.26424(f) of the MMMA and, in the alternative, her conspiracy conviction must be vacated because her conduct was not illegal. We agree, in part.

We review de novo issues of statutory interpretation. *People v Gardner*, 482 Mich 41, 46; 753 NW2d 78 (2008). Generally, the primary goal of statutory interpretation is to discern and give effect to the Legislature's intent. *People v Morey*, 461 Mich 325, 329-330; 603 NW2d 250 (1999). But the MMMA was the result of a voter initiative therefore we must ascertain and give effect to the intent of the electorate. *People v Kolanek*, 491 Mich 382, 397; 817 NW2d 528 (2012). To that end, "words of an initiative law are given their ordinary and customary meaning as would have been understood by the voters." *Welch Foods, Inc v Attorney General*, 213 Mich App 459, 461; 540 NW2d 693 (1995).

First, we consider defendant's claim that she was immune from prosecution under MCL 333.26424(f) of the MMMA. At the relevant time, MCL 333.26424(f) provided:

> A physician shall not be subject to arrest, prosecution, or penalty in any manner . . . solely for providing written certifications, in the course of a bona fide physician-patient relationship and after the physician has completed a full assessment of the qualifying patient's medical history, or for otherwise stating that, in the physician's professional opinion, a patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or

-3-

alleviate the patient's serious or debilitating medical condition or symptoms associated with the serious or debilitating medical condition . . . .

Defendant argues that she was entitled to immunity because she had bona fide relationships with her customers and stated that, in her professional opinion, each of her customers were likely to benefit from the medical use of marijuana. At the time she was charged, the phrase "bona fide relationship" was not defined in the MMMMA; however, defendant argues, she did not have to physically meet with patients to have "bona fide physician-patient relationships."

We need not decide whether defendant had to physically meet with her customers to have "bona fide physician-patient relationships" because, in this case, there was no evidence of *any* type of "physician-patient relationship." But, as this Court noted in *People v Redden*, 290 Mich App 65, 86; 799 NW2d 184 (2010), quoting *Random House Webster's College Dictionary* (1997), the definition of "bona fide" includes: "2. authentic; genuine; real." Here, there was no evidence that defendant had "bona fide physician-patient relationships" with the undercover police officers, or similar persons, seeking certifications, or that she completed full assessments of their medical histories before signing the written certifications that were filled out and issued by Deloose. And there was no evidence that defendant could have formulated any "professional opinion" regarding the likelihood that the undercover police officers, or similar persons—who only saw and paid Deloose for the certifications—would likely benefit from the medical use of marijuana to treat or alleviate serious or debilitating medical conditions or related symptoms. Accordingly, defendant's claim that she was entitled to immunity under MCL 333.26424(f) is wholly without merit.

Second, we consider defendant's claim that she could not be convicted of conspiracy to commit a legal act in an unlawful manner for failing to comply with MCL 333.26424(f) because such conduct is not illegal. In essence, defendant is arguing on appeal, and argued in the trial court, that the allegations set forth in the information did not constitute the crime of conspiracy to commit a legal act in an illegal manner.[3] We agree.

The conspiracy statute, MCL 750.157a provides:

Any person who conspires together with 1 or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner is guilty of the crime of conspiracy . . . .

---

[3] While defendant argues on appeal that the conspiracy statute is "impermissibly vague as applied to her circumstances," it appears from her argument that she is actually claiming that the information was insufficient because it failed to allege that criminal means were used to accomplish the lawful object of the alleged conspiracy. That is, she argues, "[f]ailure to comply with the requirements of the MMMA is not a felony, a misdemeanor, or even a civil infraction." Thus, we need not consider the related issues whether the conspiracy statute was vague as applied to her circumstances or whether this prosecution was barred by the "rule of lenity."

Defendant was *not* charged with conspiring to commit "an offense prohibited by law." For example, defendant was not charged with conspiracy to deliver marijuana to their customers who actually obtained registry identification cards with defendant's "physician certifications" and then used the identification cards to purchase marijuana. She also was not charged with, for example, conspiracy to obtain money by false pretenses in violation of MCL 750.218(1)(c) for selling physician certifications by falsely representing that the certifications satisfied the requirements of the MMMA knowing that they were, in fact, worthless because defendant did not have bona fide physician-patient relationships with their customers, did not complete a full assessment of their customers' medical history, and could not render any professional opinion that their use of medical marijuana would be beneficial as required by the MMMA.

Instead, defendant was charged with conspiring to commit a legal act in an illegal manner. Specifically, defendant was charged with unlawfully conspiring "to issue signed 'Physician Certifications' under the Michigan Medical Marijuana Act without establishing a bona fide physician-patient relationship and/or without establishing a factual basis to form a professional opinion that the person is likely to receive therapeutic or palliative benefit from the use of marijuana." We agree with defendant that the "illegal manner" charged was not "illegal."

When the charge of conspiracy is premised on the performance of a legal act in an illegal manner, the element of criminality that must be established is the illegal manner otherwise the agreement is not a crime. See *People v Arnold*, 46 Mich 268, 271; 9 NW 406 (1881). As our Supreme Court held in *Alderman v People*, 4 Mich 414 (1857):

> [T]o constitute an indictable conspiracy, there must be a combination of two or more persons to commit some act, known as an offense at common law, or that has been declared such by statute.
>
> * * *
>
> If, on the contrary, the combination be to do an act, not in itself unlawful, but which it is agreed to accomplish by criminal or unlawful means, then those means must be particularly set forth, and be such as constitute an offense, either at common law or by statute. [*Id*. at 431-432.]

We first determine whether defendant and Deloose conspired to commit "a legal act." As discussed above, defendant and Deloose were in the business of providing, for a price, physician certifications to prospective applicants seeking registry identification cards issued by the department of licensing and regulatory affairs for the medical use of marijuana. An agreement to provide the service of issuing physician certifications for a price, alone, is not an illegal act. A physician certification must be submitted in support of a request for a registry identification card and, generally, physicians and their assistants are paid for their services. Thus, we conclude that defendant and Deloose conspired to commit "a legal act," i.e., an act that was not "an offense prohibited by law" within the contemplation of MCL 750.157a.

Next, we consider whether defendant and Deloose conspired to commit that legal act "in an illegal manner." MCL 750.157a does not define the phrase "illegal manner;" thus, we may consult a dictionary to construe the terms according to their ordinary and generally accepted

meanings. See *People v Haynes*, 281 Mich App 27, 29; 760 NW2d 283 (2008). The word "illegal" means "forbidden by law or statute." *Random House Webster's College Dictionary* (1997). And the word "manner" means "a way of doing, being done, or happening; mode of action, occurrence, etc." *Id.*

Here, the "manner" in which defendant and Deloose conducted their business of providing physician certifications to their customers for money included that defendant would sign blank certification forms which stated:

> I hereby certify that I am a physician licensed to practice medicine in Michigan. I have responsibility for the care and treatment for the above named patient. It is my professional opinion that the applicant has been diagnosed with a debilitating medical condition as indicated above. The medical use of marijuana is likely to provide therapeutic benefits for the symptoms or affects [sic] of applicant's condition. This is not a prescription for the use of medical marijuana. Additionally if the patient ceases to suffer from the above identified debilitating condition I hereby certify I will notify the department in writing.

The manner in which defendant and Deloose conducted their business of providing physician certifications to their customers also included that Deloose would meet with their customers, fill in the information required by the certification form, and collect money in exchange for the completed document that appeared on its face to be legitimate and valid for purposes of the MMMA. Defendant had no previous relationships with any of their customers, did not meet with their customers, did not examine their customers, and did not collect any medical history from their customers. Accordingly, despite her certified statements to the contrary, defendant could not have had "responsibility for the care and treatment" of the prospective applicants, and could not have formulated a "professional opinion that the applicant has been diagnosed with a debilitating medical condition," or that the "medical use of marijuana [was] likely to provide therapeutic benefits for the symptoms or affects [sic] of applicant's condition."

The issue, then, is whether this "manner" of providing physician certifications was "illegal." The prosecution argued in the trial court, and argues here on appeal, that the failure to comply with the requirements of MCL 333.26424(f) was "illegal." But MCL 333.26424(f) does not state that the failure to comply with its requirements is "illegal." That is, this statute does not define prohibited conduct and it does not authorize punishment for noncompliance. Rather, MCL 333.26424(f) grants immunity from arrest, prosecution, or penalty to physicians who meet the delineated requirements, just as subsections (a) and (b) grant broad immunity to qualifying patients and primary caregivers who meet the statutory requirements. See *People v Carruthers*, 301 Mich App 590, 597-598; 837 NW2d 16 (2013). The MMMA does provide for prosecution for certain proscribed acts. MCL 333.26427(d) provides that "[f]raudulent representation to a law enforcement official of any fact or circumstance relating to the medical use of marihuana to avoid arrest or prosecution" is punishable by a fine. And MCL 333.26424(k) provides that it is a felony for a registered qualifying patient or registered primary caregiver to sell marijuana to someone not allowed to use it for medical purposes under the MMMA. Unlike these statutory provisions, MCL 333.26424(f) does not prohibit physicians from issuing written certifications in the absence of a bona fide physician-patient, without conducting a full assessment of medical history, and when a "professional opinion" cannot be formulated. That is, this statute does not

-6-

define any prohibited conduct, does not characterize any such conduct as constituting either a misdemeanor or felony, and does not provide for any punishment.

Plaintiff argued in the trial court, and the trial court agreed, that "[t]he logical corollary to [MCL 333.2624(f)] is that if the physician does not comport with the statute, she is subject to prosecution." We disagree. The "logical corollary" is that a physician who fails to comply with the statute is *not* immune from "arrest, prosecution, or penalty in any manner." See MCL 333.26424(f). Therefore, we conclude that the charged "manner" that defendant and Deloose were alleged to have used to accomplish the legal act of providing physician certifications for money was not "illegal" because the failure to comply with the requirements of MCL 333.26424(f) is not illegal. That is, the issuance of signed physician certifications for purposes of the MMMA "without establishing a bona fide physician-patient relationship and/or without establishing a factual basis to form a professional opinion that the person is likely to receive therapeutic or palliative benefit from the use of marijuana" is not illegal under MCL 333.26424(f). Accordingly, the information did not set forth the criminal offense of conspiracy to commit a legal act in an illegal manner and defendant's conspiracy conviction must be vacated.[4] See, e.g., *People v Summers*, 115 Mich 537, 543; 73 NW 818 (1898); *People v Petheram*, 64 Mich 252, 258; 31 NW 188 (1887); *Alderman*, 4 Mich at 429.

Further, defendant argues by supplemental brief that her sentence impermissibly included the assessment of court costs in the amount of $1,000. After de novo review of this issue of law, we disagree. See *People v Cunningham*, 496 Mich 145, 149; 852 NW2d 118 (2014).

In *Cunningham*, 496 Mich at 149, our Supreme Court held that a sentence cannot include the imposition of court costs unless authorized by statute. The Court noted, however, that the Legislature has chosen to provide courts with the authority to impose costs under certain circumstances, including "when a criminal defendant is placed on probation." *Id*. at 150-151. Pursuant to MCL 771.3(2)(c), as a condition of probation, a court may require the probationer to "[p]ay costs pursuant to subsection (5)." And subsection (5) provides: "If the court requires the probationer to pay costs under subsection (2), the costs shall be limited to expenses specifically incurred in prosecuting the defendant or providing legal assistance to the defendant and supervision of the probationer."

In this case, defendant was sentenced to 18 months' probation and ordered to pay supervision fees of $360, court costs in the amount of $1,000, and $3,416.90 in repayment of court-appointed attorney fees. The trial court was authorized by MCL 771.3(2)(c) to impose these costs against defendant. Accordingly, defendant's claim is without merit.

---

[4] In light of this conclusion, we need not address defendant's related challenge to the sufficiency of the evidence premised on her claim that "the prosecution presented no evidence to establish that any action taken by [her] was done in an 'illegal manner.'"

Defendant's conspiracy conviction is vacated.  In all other respects, we affirm.


/s/ Mark J. Cavanagh